## Weidman Appeal

*Michael A. O'Pake*, for petitioner.

*A. H. Ehrgood, Jr.*, for Pennsylvania Game Commission.

MEYER, J., March 19, 1968.—Petitioner was charged with violation of section 306 of The Game Law of

June 3, 1937, P. L. 1225. This section requires, inter alia, that the license certificate issued with the hunter's license shall be carried on the person of the licensee at all times while hunting or trapping and shall be shown *immediately* upon demand by any officer whose duty it is to protect wild animals and birds. After hearing before Justice of the Peace A. W. Lane in Lancaster County, petitioner was convicted. A petition for allowance of appeal was refused by the Lancaster County courts. A petition for certiorari with exceptions was also dismissed by that court. Thereafter, petitioner was notified by letter that the Pennsylvania Game Commission had, on October 13, 1967, revoked petitioner's hunting and trapping privileges from September 1, 1967, until August 31, 1968. Pursuant to section 315 of The Game Law, petitioner asked for a review of the matter. This petition was filed in Lebanon County because The Game Law requires that such petition shall be heard in the court of common pleas of the county of the legal residence of the licensee, and petitioner was, and is, a resident of Lebanon County.

The district courts are not in accord as to what the court may or may not do on a petition of this sort. In Appeal of Wunch, 45 Erie 25 (1963), the court held that while the matter is de novo before the court, it could not set aside findings of the Game Commission if proof shows that appellant was guilty and also that the question of the period of revocation lies entirely with the Game Commission.

In Pennsylvania Game Commission v. Smith, 80 York 142 (1966), it was held that section 315 of The Game Law requires the court to hear the matter de novo and that an appeal is not analogous to an appeal from the suspension of a motor vehicle operator's license in which the fact of the conviction is conclusive as to the right of the administrative body to suspend the license. In Commonwealth v. Robinson, 8 Adams

173 (1967), the court said it was not bound by prior conviction but could reexamine the testimony taken on the appeal and independently determine whether appellant was guilty of the violation charged.

It appears to this court that the purpose of the appeal is to have the court determine not only the guilt or innocence of defendant, but also whether the period of revocation of the hunting license as determined by the Game Commission was excessive in view of the violation committed. President Judge Shughart, of Cumberland County, specially presiding in Franklin County, came to this same conclusion in a very thorough and exhaustive opinion in Pennsylvania Game Commission v. Long, 14 Cumb. 94 (1964).

Neither petitioner nor the Commonwealth (Game Commission) filed briefs.

It would appear from the testimony in this case that on December 12th petitioner and others with him were hunting deer. A game warden, not in uniform, hearing a number of shots and believing that some violation had occurred, approached petitioner and, according to his testimony, exhibited his badge and demanded to see the license of petitioner. Concerning the events that took place at this stage, there is considerable dispute. The warden contended that he showed his badge to petitioner who then backed away from him, speaking into a walkie-talkie as he took off his coat and laid it on the ground. Petitioner admitted that he took off his coat and laid it on the ground. His answer as to why he did this was that he did not know the identity of the man who was approaching him. He also testified that his license was visible at all times. It is undisputed, however, that, at some stage of the interrogation, petitioner did pick up his coat and show the officer his license. Inasmuch as the officer was not in uniform, the only way in which he could make his

identity known was by exhibiting his badge which was an inch and a half in size.

The impression is not gained from the evidence that petitioner made any serious attempt to escape from the requirement that he reveal his identity.

Had petitioner done this, the court not only would have sustained the revocation but, in all likelihood, would have increased the penalty as determined by the Game Commission. This court does not condone violations of law, but it does feel the punishment should be commensurate with the offense allegedly committed. One cannot help but feel that the revocation of petitioner's hunting license for one year may have been the result of the warden's impression that petitioner was engaged in some other illegal activity.

The only offense with which petitioner was charged was in failing to show his license immediately upon demand. An examination of The Game Law reveals that this is one of the least offensive violations of that law, because it provides only for a fine of $5 and costs of prosecution. This law permits the Game Commission to revoke a license for a period of up to three years for a number of violations. Some of these violations are: mutilating and carrying away notices posted by the Commonwealth; damaging real or personal property; causing a forest fire; hunting while under the influence of intoxicating liquor or narcotic drugs; committing an assault upon a land owner; injuring a human being by gunfire or with a bow and arrow; etc.

An examination of a few of the revocations imposed by the Game Commission reveals a great disparity in the punishment meted out to hunters. For instance, in Commonwealth v. Bixler, 5 D. & C. 2d 369, the hunter fired a gun in a careless manner and his license was revoked for one year. The revocation was sustained and one of the reasons given was that the hunter

had not paid the medical and hospital bills of the injured person in a satisfactory manner. With this revocation and the sustaining of it by the Lancaster County courts, this court heartily agrees.

Petitioner in this case, however, was licensed; he did show his license, possibly not immediately to the satisfaction of the warden, but, at least, he did show it.

There is no comparable offense under The Vehicle Code. That code only provides that a person should reveal his identity. We have never heard of any instance of a prosecution for not immediately revealing identity and for a very good reason, because no court would sustain such a conviction.

It is this court's opinion that the penalty of the revocation of license for one year was entirely too harsh for the offense allegedly committed.

The date of the commencement of the revocation was September 1, 1967, but, on that same date, G. Thomas Gates, President Judge of this court, stayed all proceedings and restored the hunting privileges of petitioner until the determination of this case.

The court, being of the opinion that while the evidence supports the conviction and the revocation of the hunting privileges, it, nevertheless, feels that a modification of the order of revocation is in order and should be made.

Accordingly, we enter this

ORDER

And now, March 19, 1968, for the reasons given in the opinion, the action of the Pennsylvania Game Commission in revoking the hunting privileges of Marvin H. Weidman is sustained, but the period of revocation is modified to one of four months, to begin from the date of this order and ending on July 19, 1968. Costs to be paid by petitioner, Marvin H. Weidman.